FILED
2013 Apr-30 PM 01:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **DANIEL STEWART, JR.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:13-CV-539-VEH |
| | ) |
| **SANOFI AVENTIS U.S., LLC,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Plaintiff Daniel Stewart, Jr. ("Mr. Stewart") initiated this products liability action in the Circuit Court of Etowah County, Alabama, on July 26, 2012. (Doc. 1 ¶ 1). Defendant Sanofi Aventis U.S., LLC ("Sanofi") removed the lawsuit to federal court on March 21, 2013. (Doc. 1 at 1). The case was reassigned to the undersigned on March 26, 2013. (Doc. 9). Sanofi filed an amended removal petition on April 5, 2013. (Doc. 14).

Pending before the court is Sanofi's Motion To Dismiss (Doc. 12) (the "Motion") filed on March 28, 2013. (Doc. 12). Mr. Stewart has filed no opposition to the Motion, which under Appendix III to the court's uniform initial order was due on April 11, 2013. (*See* Doc. 2 at 23 ¶ B.2 ("The opponent's responsive brief shall

be filed no later than fourteen (14) **calendar** days thereafter.")).  Accordingly, the Motion is now ready for disposition, and, for the reasons explained below, is **GRANTED IN PART** and is otherwise **DENIED**.

## II.   Standards

### A.   Rule 12(b)(6)

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint.  *See* Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also* Fed. R. Civ. P. 8(a).

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint.  *Twombly*, 550 U.S. at 545 (quoting *Conley*, 355 U.S. at 47).  However at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Twombly*, 550 U.S. at 563.

"[A] court considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

    **B.**    **Mr. Stewart's Failure to Oppose**

Mr. Stewart's failure to file any opposition does not automatically mean that the Motion is due to be granted. As explained by Judge Steele in *Branch Banking and Trust Co. v. Howard*, No. 12–0175–WS–N, 2013 WL 172903, *1 (S.D. Ala. Jan. 16, 2013):

> As noted, Churchill and Howard elected not to be heard in

response to BB & T's Amended Motion to Dismiss. Notwithstanding that omission, BB & T (as Rule 12(b)(6) movant) bears the initial burden of demonstrating that it is entitled to dismissal of the counterclaims. Churchill's and Howard's lack of response to the Rule 12(b)(6) Motion does not trigger the kneejerk granting of such Motion on an abandonment theory. *See Gailes v. Marengo County Sheriff's Dep't*, 2013 WL 81227, *5 (S.D. Ala. Jan. 4, 2013) ("the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss"). Rather, it remains BB & T's burden as movant to establish its entitlement to relief under Rule 12(b)(6). In light of these circumstances, the Court scrutinizes BB & T's Motion to Dismiss in accordance with the following legal standard: "the Court will review the merits of the [movant]'s position and, if it is clearly incorrect or inadequate to satisfy the [movant]'s initial burden, will deny the motion despite the [nonmovant]'s failure to respond. If, however, the [movant]'s presentation is adequate to satisfy its initial burden, the Court will not deny the motion based on arguments the [nonmovant] could have made but by silence elected not to raise." *Id.*

*Branch Banking*, 2013 WL 172903, *1 (footnotes omitted).

## III.  Analysis

Mr. Stewart's second amended complaint indicates that he is suing Sanofi in its capacity as a designer, manufacturer, and seller of the prescription drug named Ambien. (Doc. 12-1 at 1 ¶ 1).[1] Mr. Stewart claims that his use of zolpidem, the generic form of Ambien, as a sleeping aid on the night of October 3, 2011,caused him to engage in bizarre and erratic acts of misconduct while he was out of town in Indiana on a business trip, which culminated in his arrest and the loss of his job. (*Id.*

---

[1] The page references to Doc. 12-1 correspond with the court's CM/ECF numbering system.

at 3 ¶ 5; *id.* at 4 ¶¶ 7, 10).

Mr. Stewart does not allege Sanofi is a designer, manufacturer, or seller of zolpidem. (Doc. 12-1 at 3 ¶ 5). Instead, he contends that other former defendants (that were dismissed during the course of the state court proceedings)[2] are responsible for the production and supply of zolpidem as a generic drug on the market. (*Id.*). Mr. Stewart's alleged damages include "much humiliation, embarrassment and chagrin . . . psychological and mental pain and suffering . . . ." (Doc. 12-1 at 11 ¶ 13).

Mr. Stewart asserts three separate counts against Sanofi: count one for negligently, wantonly, and/or willfully failing to adequately warn; count two for fraudulent concealment; and count three for breach of implied warranty for a particular purpose. (Doc. 12-1 at 11-12).

**A.  Applicable Law**

As a threshold matter, Sanofi asserts in its Motion that this court should apply Indiana law when evaluating the ability of Mr. Stewart to state a claim against it. More specifically, following Alabama's choice of law principles as this is a diversity

---

[2] Specifically, first the state court granted Defendant Generics Bidco I, LLC's partially contested motion to dismiss on February 5, 2013. (Doc. 14 ¶¶ 5-6; Doc. 1 at Ex. 6). Second, one day later–on February 6, 2013–the state court granted Mr. Stewart's motion to dismiss Defendant Propst Distribution, Inc. d/b/a Qualitest Pharmaceuticals, Inc. (Doc. 14 ¶¶ 6-7; Doc. 1 at Ex. 7).

case,[3] Sanofi maintains that because Mr. Stewart "was injured in Indiana . . . Indiana law applies to his claims against [it]."  (Doc. 12 at 3).  The court agrees.

As the Supreme Court of Alabama has articulated:

> <u>*Lex loci delicti* has been the rule in Alabama for almost 100 years. Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred</u>. *Norris v. Taylor*, 460 So.2d 151, 153 (Ala.1984); *Mullins v. Alabama Great Southern R.R.*, 239 Ala. 608, 195 So. 866 (1940); *Dawson v. Dawson*, 224 Ala. 13, 138 So. 414 (1931); *Alabama Great Southern R.R. v. Carroll*, 97 Ala. 126, 11 So. 803 (1892). The plaintiff contends that the doctrine of *lex loci delicti* is outmoded and unfair.  He urges Alabama to adopt the approach of the Restatement (Second) of Conflict of Laws (1971). . . .
>
> After careful consideration, we are not convinced that we should abandon the *lex loci delicti* rule for the approach of the Restatement (Second) on the facts of the present case. Professor Kay and other commentators tell us that the adoption of the approach of the Restatement (Second) has not brought certainty or uniformity to the law:
>
>> "Some state courts routinely list [the Restatement's] relevant sections in their opinions and try to follow them; this task is easiest when the case is controlled by one of the Restatement Second's specific narrow rules. Other state courts have not been consistent in their terminology about what approach they are following, and others have retained primary emphasis on the place of the wrong in tort cases, even while abandoning the *lex loci delicti* for the Restatement Second. . . . This review of the cases suggests that, if the original Restatement was unsuccessful because

---

[3] *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

> of its dogmatic rigidity and its insistence on the uncritical application of a few specific rules, the Restatement Second may fail to provide enough guidance to the courts to produce even a semblance of uniformity among the states following its method. In the drafters' attempt to mollify their critics, they have created an umbrella for traditionalist and modern theorist alike: a fragile shelter that may prove itself unable to survive any but the most gentle of showers."
>
> We find that we agree with the Supreme Court of Georgia. The newer approaches to choice of law problems are neither less confusing nor more certain than the traditional approach. "Until it becomes clear that a better rule exists, we will adhere to our traditional approach." *General Tel. Co. v. Trimm, supra*, 252 Ga. at 96, 311 S.E. 2d at 462.
>
> We also see no need for any special exception in this particular case on public policy grounds, as the plaintiff requests. The plaintiff knew the law of Alabama at the time he filed the suits, and chose to file in Alabama. The judgment of the trial court is due to be affirmed.

*Fitts v. Minnesota Min. & Mfg. Co.*, 581 So. 2d 819, 823 (Ala. 1991) (footnotes omitted) (emphasis added). Therefore, consistent with *Fitts*, the court will address Mr. Stewart's claims under Indiana law.

### B. Plausibility of Mr. Stewart's Claims Under Indiana Law

#### 1. The Indiana Product Liability Act

Sanofi suggests that all of Mr. Stewart's claims are governed by the Indiana Product Liability Act (the "IPLA"). The IPLA provides in relevant part that:

Sec. 1. This article governs all actions that are:

>    (1) brought by a user or consumer;
>
>    (2) against a manufacturer or seller; and
>
>    (3) for physical harm caused by a product;
>
> <u>regardless of the substantive legal theory or theories upon which the action is brought</u>.

Ind. Code § 34-20-1-1 (emphasis added).  Sanofi has not cited to any Supreme Court of Indiana decisions in support of its Motion.  Instead, Sanofi relies upon opinions issued by the Indiana Court of Appeals and several federal district courts. (Doc. 12 at 5-6).

As the Supreme Court of Indiana explained when answering several certified questions in *Dague v. Piper Aircraft Corp.*, 418 N.E.2d 207 (Ind. 1981):

> <u>[I]t seems clear the legislature intended that the act govern all product liability actions</u>, whether the theory of liability is negligence or strict liability in tort.  This is what the legislature expressly said in section one.
>
>    It is true, as plaintiff asserts, that the manner in which a person can be negligent concerning a duty to warn in the context of product liability is not peculiar to that field of law. The same type of negligence, of course, can and does appear in other fields of tort law. However, an action for damages resulting from the alleged failure of a manufacturer or seller to warn a user of its product's latently defective nature is certainly a product liability action based on a theory of negligence, and, ultimately, is one in which the claim is made that the damage was caused by or resulted from the manufacture, construction or design of the product. *See* Ind. Code s 33-1-1.5-2, *supra*.  <u>The Product Liability Act expressly applies to all product liability actions sounding in tort,</u>

> including those based upon the theory of negligence, and the legislature clearly intended that no cause of action would exist on any such product liability theory after ten years. It is not our office to question the wisdom of the legislature's enactments. As a reviewing court, we will not substitute our judgment or opinion on such matters for that of the legislature.

*Dague*, 418 N.E.2d at 212 (emphasis added); *see also Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 975 (Ind. 2002) ("In *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 528, 418 N.E.2d 207, 212 (1981), we determined that it was 'clear the legislature intended that the [A]ct govern all product liability actions, whether the theory of liability is negligence or strict liability in tort.'").

Therefore, guided by *Dague*, the court finds that counts one and two of Mr. Stewart's complaint are governed by the IPLA and should be merged into one products liability count asserted under the IPLA. *Cf. Atkinson v. P & G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1024 (N.D. Ind. 2011) ("Clairol argues that because Atkinson can only bring one claim under the IPLA, Counts III and IV should be dismissed."); *id.* ("However, Atkinson is correct that it is more proper for her claims of strict liability and negligence to be merged into one claim under the IPLA."). Accordingly, the Motion is **DENIED** as to counts one and two, but the court will require Mr. Stewart to replead them as a merged IPLA count.

However, the court reaches a different conclusion about whether Mr. Stewart's

breach of implied warranty claim is governed by the IPLA. Having studied the opinions cited by Sanofi and in the absence of controlling precedent by the Supreme Court of Indiana,[4] this court is persuaded to follow the rule adopted by the Northern District of Indiana in *Atkinson* with respect to warranty claims sounding in contract: "This court will follow the many state and federal decisions finding that the IPLA supplants tort-based, but not contract-based claims for breach of implied warranty." *See also Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153–54 (Ind. 2005) ("Indiana law under the [IPLA] and under general negligence law is that damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected.").

As the court in *Atkinson* further explained:

> In Count II, Atkinson has pleaded enough for a contract-based claim of breach of implied warranty because she alleges that the product was subject to an implied warranty and that the warranty was breached because the product was unsuitable for the purpose for which it was sold. *See e.g., Cincinnati Ins. Cos.*, 2006 WL 299064, at *4, 2006 U.S.

---

[4] *See, e.g., Kovach v. Caligor Midwest*, 913 N.E.2d 193, 197 (Ind. 2009) ("This Court has never addressed whether the [I]PLA preempts warranty-based theories of recovery for physical harm, but several federal district courts and other panels of the Court of Appeals have held that tort-based breach-of-warranty claims have been subsumed into the [I]PLA.").

> Dist. LEXIS 9807, at *12. Through a contract-based breach of implied warranty claim, Atkinson can pursue damages for the cost of the product and economic loss from the failure of the product. *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 952 n.4 (Ind. 2005). In Count II, Atkinson did not ask to recover for the cost of the product and she did not limit her damages to economic loss. However, Atkinson was not "required to delineate in the Complaint [her] damages to make it clear that the sought after damages included the return of the purchase price of the [product]." *Id.* Although Atkinson will only be able to recover the cost of the product and pure economic loss under a contract—based breach of warranty claim, *Allstate Ins. Co. v. Hennings*, 827 N.E.2d 1244, 1250 (Ind. Ct. App. 2005), the fact that she requested punitive damages under this count does not automatically render the claim one that sounds in tort when she has also pleaded a contract-based claim.

*Atkinson*, 813 F. Supp. 2d 1025-26. Thus, Mr. Stewart's third count is not necessarily subsumed by the IPLA, so long as he only seeks "to recover the cost of the product and pure economic loss under a contract-based breach of warranty claim."

### 2. Lack of Privity

However, Mr. Stewart's potential contract-based warranty count suffers from another deficiency–lack of vertical privity between him and Sanofi.[5] "'Vertical' privity typically becomes an issue when a purchaser files a breach of warranty action against a vendor in the purchaser's distribution chain who is not the purchaser's immediate seller." *Hyundai Motor America, Inc. v. Goodin*, 822 N.E.2d 947, 952 (Ind. 2005). "Simply put, vertical privity exists only between immediate links in a

---

[5] "Privity is not required for claims under the IPLA." *Atkinson*, 813 F. Supp. 2d at 1027 n.4 (citing Ind. Code § 34-20-2-2).

11

distribution chain.  A buyer in the same chain who did not purchase directly from a seller is 'remote' as to that seller." *Id.*  Here, Sanofi contends that, because Mr. Stewart did not allegedly purchase and ingest any product manufactured or sold by it, but instead by other former defendant(s), no vertical privity exists.

Again, as the court reasoned in *Atkinson*:

> The second issue is whether Atkinson's breach of implied and express warranty claim should be dismissed due to her failure to plead vertical privity between herself and Clairol. Vertical privity is not required for a claim of breach of the implied warranty of merchantability even if that claim sounds in contract. *Goodin*, 822 N.E.2d at 959. <u>Still, vertical privity is required for claims of</u> breach of express warranty and <u>breach of implied warranty of fitness for a particular purpose</u>. *Pizel v. Monaco Coach Corp.*, 364 F. Supp. 2d 790, 793 (N.D. Ind. 2005) (stating that the holding in *Goodin* was limited to abolishing the vertical privity requirement for claims of breach of the implied warranty of merchantability); *Hunt v. Unknown Chem. Mfr. No. One*, No. IP 02–389–C, 2003 WL 23101798, at *12, 2003 U.S. Dist. LEXIS 20138, at *34–35 (S.D. Ind. Nov. 5, 2003) (stating that "a plaintiff bringing a breach of implied warranty of fitness for a particular purpose claim under Ind. Code § 26–1–2–315 must show privity of contract"); *Davidson v. John Deere & Co.*, 644 F. Supp. 707, 713 (N.D. Ind. 1986) (finding that the plaintiff did not have a claim for breach of express warranty because "[p]rivity has not been abrogated as a requirement in contract actions for breach of warranty"); *cf. In re 2005 United States Grand Prix*, 461 F. Supp. 2d 855, 860–61 (S.D. Ind. 2006) (dismissing the plaintiffs' claims for breach of contract because they were "neither parties to nor in privity with any of the third-party contracts they [sought] to enforce").

*Atkinson*, 813 F. Supp. 2d at 1026 (footnote omitted) (emphasis added).

Comparable to *Atkinson*, this court finds that Mr. Stewart's warranty claim is

not plausibly stated under Indiana law because, as a fitness for particular purpose contractual warranty claim, it requires vertical privity, and Mr. Stewart has alleged that the generic drug which he ingested and which was allegedly unfit for its particular purpose was manufactured by defendant(s) other than Sanofi. *Cf. Atkinson*, 813 F. Supp. 2d at 1027 ("In order to have a claim for breach of express warranty or of the implied warranty of fitness for a particular purpose, Atkinson would have had to show that she was in privity of contract with the person or entity who purchased the product from Clairol."); *id.* ("Atkinson has not pleaded contract-based claims of breach of express warranty or breach of the implied warranty of fitness for a particular purpose because she has not pleaded facts indicating that she was in privity with Clairol.").

Here, Mr. Stewart has not pleaded any facts to show that he was in privity with Sanofi in his purchase and use of the generic sleeping drug zolpidem. Therefore, the Motion is **GRANTED** as to count three.

### 3. Other Issues Raised by Sanofi

Because, as Sanofi concedes, the status of its potential liability is still an open question under the IPLA (Doc. 12 at 10), the court rejects Sanofi's efforts to obtain a complete dismissal of Mr. Stewart's complaint <u>at the pleadings stage</u> on the basis that "the manufacturer of a name-brand drug is not liable for damages allegedly

caused by the use of another manufacturer's generic-equivalent drug." (*Id.* at 9). The court also will not dismiss Mr. Stewart's complaint on the grounds that he has failed to meet the federal pleading standards. However, the court will require Mr. Stewart to replead his surviving claims as a merged count under the IPLA as explained in § III.B.1 above.

### III.   Conclusion

For the reasons stated herein the Motion is:  (i) **DENIED** as to counts one and two, but Mr. Stewart will be required to restate them as a merged count under the IPLA, (ii) **GRANTED** as to count three,[6] and (iii) otherwise **DENIED**. Further, Mr. Stewart is **HEREBY ORDERED** to replead his complaint consistent with the court's ruling within 20 days of the entry date of this order.

**DONE** and **ORDERED** this 30th day of April, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[6] To the extent that count three is tort-based, then it is "merged into [his] claim of products liability under the IPLA." *Atkinson*, 813 F. Supp. 2d at 1027.